UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-11009-GAO

JEFFREY FORBES and KIMBERLY MICHAUD, individually
and on behalf of all others similarly situated,
Plaintiffs,

v.

MACY'S, INC.,
Defendant.

OPINION AND ORDER
March 13, 2026

O'TOOLE, D.J.

Jeffrey Forbes and Kimberly Michaud, the named plaintiffs in this putative class action, allege that when they applied for a "Massachusetts-based job" with the defendant, Macy's, Inc., (First Am. Class Action Compl. ("Am. Compl.") ¶ 6 (dkt. no. 22)), the application materials they "filled out," (id. ¶ 36), did not contain a written "notice of job applicants' . . . rights concerning lie detector tests," (id. ¶ 1). As "bona-fide" applicants to Massachusetts-based positions, the plaintiffs say they have a "statutorily guaranteed right" to receive such a written notice. (Id. ¶ 17.) So, by omitting it from their applications, the plaintiffs contend that Macy's deprived them of that statutory right. Accordingly, Forbes and Michaud "[brought] this action, on behalf of themselves and those similarly situated, to redress" Macy's alleged violations of Massachusetts General Laws Chapter 149, Section 19B(2)(b), the statute that contains the notice provision at issue. (See id. ¶ 5.)

Macy's removed the action from the Business Litigation Session of the Massachusetts Superior Court and now moves this Court under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint for failure to state a claim to relief.

The Court does not reach the merits of that motion, however, because it finds that the plaintiffs lack Article III standing. For the reasons explained below, the purely procedural injury alleged in the amended complaint is not an injury in fact. The Court therefore lacks subject-matter jurisdiction over the plaintiffs' claims, and this action shall be remanded to the Business Litigation Session of the Superior Court.

## I.       Background

The plaintiffs seek three forms of relief in the amended complaint. First, they ask the Court to "declare" that Macy's alleged omission of the notice requirement is "unlawful." (Id. ¶ 33.) Second, they ask the Court to "enjoin [Macy's] from using and disseminating job application materials that do not comply with" Section 19B's notice provision. (Id.) Third, they ask the Court to award "minimum statutory damages of $500 per violation" by Macy's, (id. ¶ 3), as well as "reasonable attorney's fees and costs," (id. ¶ 37).

In support of those requests, the amended complaint largely rehearses legal conclusions regarding the parties' purported rights and duties under Section 19B. The few factual—that is, non-conclusory—allegations in the pleadings concern Forbes and Michaud, who both reside in Massachusetts and applied for Massachusetts-based jobs with Macy's. To be sure, the plaintiffs allege throughout the amended complaint that Macy's application materials—including the applications that the plaintiffs themselves filled out—omit the notice that they say Section 19B requires. (See, e.g., id. ¶ 36.)

But the amended complaint otherwise lacks any details regarding what the application process was like for Forbes or Michaud or, for that matter, any other member of the putative class. Critically, the plaintiffs do not allege that Macy's presently uses, or has ever used in the past, lie detector tests in the application process for its Massachusetts-based jobs. Nor do the plaintiffs

assert that Macy's ever asked them, even impliedly, to take such a test. Instead, they rest their case entirely on Macy's alleged procedural violation of Section 19B's notice provision, which violation "deprived them of their statutorily guaranteed right to the notice." (Id. ¶ 17.)

In response, Macy's makes two principal arguments for dismissal under Rule 12(b)(6). First, it argues that the amended complaint fails to state a claim for relief because Section 19B does not provide a private right of action. Even if it did, Macy's avers, the amended complaint must be dismissed for the additional, independent reason that the plaintiffs failed to plead sufficient facts to establish that they are "person[s] aggrieved" within the meaning of the statute. (See Def.'s Mem. in Supp. of Its Mot. to Dismiss at 16–17 (dkt. no. 24).) The plaintiffs counter that Macy's "improperly imputes Article III standing requirements to [Section 19B]'s 'person aggrieved' language." (Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss First Am. Compl. ("Pls.' Opp'n") at 7 (dkt. no. 26).) Further, they reason that "by removing the case, [Macy's] concedes Article III standing," and under that thesis, it is Macy's burden, not the plaintiffs', "to establish Article III standing." (Id. at 13–14.)

Macy's takes care to clarify that its arguments for dismissal are not jurisdictional, noting that they rely on "Massachusetts cases addressing Massachusetts statutes," not "Article III or any other case applying federal standing requirements." (Def.'s Reply Mem. in Supp. of Its Mot. to Dismiss at 7–8 (dkt. no. 29).) Thus, the parties train their efforts on the merits, as framed by the defendant: namely, whether the plaintiffs are properly determined to be "persons aggrieved" under Section 19B.

## II.      Standard of Review

"Article III of the Constitution limits 'the judicial Power' to 'Cases' and 'Controversies.'" Wiener v. MIB Grp., Inc., 86 F.4th 76, 84 (1st Cir. 2023) (quoting U.S. Const. art. III § 2, cl. 1).

"'The doctrine of standing,' among others, 'implements this' limit on [federal courts'] authority." Dep't of Educ. v. Brown, 600 U.S. 551, 561 (2023) (quoting Carney v. Adams, 592 U.S. 53, 58 (2020)). Thus, "before addressing [a plaintiff's] particular claims," and "regardless of whether the litigants have raised the issue," a federal court "must satisfy itself as to its jurisdiction, including . . . Article III standing to sue." Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006); accord Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 8 (1st Cir. 2014) (explaining that litigants cannot manufacture Article III jurisdiction through concessions or stipulations).

The standing inquiry, in essence, determines "whether each particular plaintiff is entitled to have a federal court adjudicate each particular claim that he asserts." See Kolackovsky v. Town of Rockport, 165 F.4th 114, 120 (1st Cir. 2026) (quoting Hochendoner v. Genzyme Corp., 823 F.3d 724, 733 (1st Cir. 2016)); see also Spooner v. EEN, Inc., 644 F.3d 62, 67 (1st Cir. 2011) ("A court is duty-bound to notice, and act upon, defects in its subject matter jurisdiction sua sponte."). The "inquiry is both plaintiff-specific and claim-specific." Pagán, 448 F.3d at 26; see TransUnion LLC v. Ramirez, 594 U.S. 413, 431 (2021) (explaining that plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek"). Thus, "[e]ven plaintiffs seeking only declaratory judgment must meet this standard." Kolackovsky, 165 F.4th at 119. If a plaintiff lacks Article III standing, "there is no case or controversy for the federal court to resolve." Wiener, 86 F.4th at 84 (quoting TransUnion, 594 U.S. at 442).

In a putative class action such as this, where no class has been certified, the Court evaluates whether the named plaintiffs have standing. See, e.g., Wilkins v. Genzyme Corp., 93 F.4th 33, 40 (1st Cir. 2024). To do so, the Court analyzes "the face of the complaint," Kolackovsky, 165 F.4th at 120, using "the plausibility standard applicable under Rule 12(b)(6)," Hochendoner, 823 F.3d at 730. Accordingly, the Court "accept[s] as true all well-pleaded factual averments . . . and

indulge[s] all reasonable inferences therefrom in [a plaintiff's] favor." Gustavsen v. Alcon Lab'ys, Inc., 903 F.3d 1, 7 (1st Cir. 2018) (quoting Katz v. Pershing, LLC, 672 F.3d 64, 70–71 (1st Cir. 2012)). "Neither conclusory assertions nor unfounded speculation can supply the necessary heft." Hochendoner, 823 F.3d at 731.

At the same time, the Court "must 'accept as valid' the merits of [a plaintiff's] legal claims." Wiener, 86 F.4th at 83 (quoting Fed. Election Comm'n v. Cruz, 596 U.S. 289, 298 (2022)). So "[a]lthough the same pleading standards apply both to standing determinations and Rule 12(b)(6) determinations, the two inquiries remain fundamentally distinct." Hochendoner, 823 F.3d at 734; cf. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992) (explaining that elements of standing are "an indispensable part of the plaintiff's case," not "mere pleading requirements"). For that reason, the Court's ruling as to a plaintiff's standing does not address "the validity of any of [his] claims as a matter of law or the adequacy of [his] pleading to state a claim under Rule 12(b)(6)." Hochendoner, 823 F.3d at 734.

## III.    Discussion

### A.    Article III Standing

"[T]he irreducible constitutional minimum of standing contains three elements." Lujan, 504 U.S. at 560. "[A]t the pleading stage," a plaintiff must "allege facts demonstrating" all three elements. Wiener, 86 F.4th at 84. "[F]irst and foremost" among them "is the requirement that the plaintiff establish an injury in fact."[1] Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)). That requirement is a "hard floor of Article III

---

[1] Here, the Court does not expressly address the other two elements of Article III standing, traceability and redressability, because it finds that the plaintiffs have not pled an injury in fact. See Town of Milton v. F.A.A., 87 F.4th 91, 100 (1st Cir. 2023) (dismissing action without analyzing traceability or redressability where petitioner failed to show injury in fact).

of jurisdiction that cannot be removed by statute." Summers v. Earth Island Inst., 555 U.S. 488, 497 (2009).

To be cognizable, "[a]n injury in fact" must be "concrete, particularized, and actual or imminent." TransUnion, 594 U.S. at 423. "An injury is concrete if it 'actually exist[s]' and particularized if it 'affect[s] the plaintiff in a personal and individual way.'" Wiener, 86 F.4th at 84 (alterations in original) (quoting Spokeo, 578 U.S. at 339–40). Concrete harms come in many forms. "'[T]raditional tangible harms, such as physical harms and monetary harms' are 'obvious[ly]' concrete." Webb v. Injured Workers Pharmacy, LLC, 72 F.4th 365, 372 (1st Cir. 2023) (alteration in original) (quoting TransUnion, 594 U.S. at 425).

"Intangible harms can also be concrete . . . ." Id. "Chief among [such intangible harms] are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." TransUnion, 594 U.S. at 425. Further, as is relevant here, a legislature can "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." Id. (quoting Spokeo, 578 U.S. at 341); see Katz, 672 F.3d at 75 (explaining that legislatures "can raise to the status of legally cognizable injuries certain harms that might otherwise have been insufficient at common law"). That includes the "invasion of a recognized state-law right." Amrhein v. eClinical Works, LLC, 954 F.3d 328, 334 (1st Cir. 2020).

The creation of a statutory right, however, "does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." TransUnion, 594 U.S. at 426. Put another way, the fact that "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right" does not mean that "a plaintiff automatically satisfies the injury-in-fact requirement." Spokeo, 578 U.S. at 341. Rather, "'[e]ven in the context of a statutory violation,' [a plaintiff] must allege an injury in fact to satisfy

6

Article III standing," Wiener, 86 F.4th at 84 (quoting TransUnion, 594 U.S. at 426), because a legislature "may not simply . . . transform something that is not remotely harmful into" a concrete injury in fact, TransUnion, 594 U.S. at 426 (quotation omitted).

    B.    Application

As discussed, the plaintiffs contend that Section 19B gives them (and presumably every other current or prospective Massachusetts-based employee) the right to a written notice, (see Am. Compl. ¶¶ 1–2), that "[i]t is unlawful in Massachusetts to require or administer a lie detector test as a condition of employment or continued employment," (id. ¶ 35).[2] The plaintiffs say that Macy's omitted the notice from its applications for Massachusetts-based jobs, which in turn "deprived them of their statutorily guaranteed right" to receive it. (Id. ¶ 17.)

The amended complaint does not limn any additional harm beyond the alleged deprivation of the plaintiffs' asserted statutory right to the notice; that alone is the basis of their claim for declaratory and injunctive relief (Count I) and their claim for damages (Count II). For the reasons explained below, the plaintiffs lack Article III standing to seek either form of relief. The Court addresses each in turn, beginning with damages.

    i.    Damages

Even assuming, as the Court must, that Section 19B grants the plaintiffs "a statutory right" and "authorize[s] [them] to sue to vindicate that right," Wiener, 86 F.4th at 84 (quoting Spokeo, 578 U.S. at 341), the injury asserted here is "divorced from any concrete harm" to the plaintiffs,

---

[2] The notice provision at issue reads in full:

> It is unlawful in Massachusetts to require or administer a lie detector test as a condition of employment or continued employment. An employer who violates this law shall be subject to criminal penalties and civil liability.

Mass. Gen. Laws ch. 149, § 19B(2)(b).

Amrhein, 954 F.3d at 331 (quoting Spokeo, 578 U.S. at 341). The amended complaint fails to allege any concrete harm to the plaintiffs flowing from Macy's bare procedural violation of the statute's notice provision; instead, "[a]ny risk of harm" to the plaintiffs is "entirely counterfactual," Casillas v. Madison Ave. Assocs., Inc., 926 F.3d 329, 334 (7th Cir. 2019) (Barrett, J.). An "informational injury that causes no adverse effects" is not an injury in fact. TransUnion, 594 U.S. at 442 (quotation omitted); see Amrhein, 954 F.3d at 331 (explaining that a legislature may not "spin a 'bare procedural violation'" into an "injury-in-fact" (quoting Spokeo, 578 U.S. at 341)).

The purpose of Section 19B is to prevent Massachusetts employers from "'*subject[ing]*' a person applying for employment to, or '*request[ing]*' that such person take, a lie detector test." Saliba v. City of Worcester, 87 N.E.3d 100, 106 (Mass. App. Ct. 2017) (emphasis added) (quoting Mass. Gen. Laws ch. 149, § 19B). Yet, the plaintiffs do not claim that Macy's ever subjected them to—or so much as mentioned—a lie detector test during the application process. Further, nowhere does the amended complaint assert that the plaintiffs suffered any other "financial, physical, or emotional harm" from the alleged violation of their statutory right. See Amrhein, 954 F.3d at 334. Indeed, "the plaintiffs have identified no 'downstream consequences'" at all "from failing to receive" what they say is "the required information." See TransUnion, 594 U.S. at 442 (quotation omitted).

That distinguishes their claims from those at issue in Baker v. CVS Health Corp., 717 F.Supp.3d 188, 192 (D. Mass. 2024). There, another session of this District Court found that the plaintiff had sufficiently pled an injury in fact to pursue a claim against CVS under Section 19B. Baker, as the plaintiffs point out, involved an informational injury that is similar to the one alleged here: CVS allegedly failed to provide the Baker plaintiff the Section 19B notice when he applied for a Massachusetts-based job. The Baker plaintiff, however, further alleged that CVS subjected

him to a lie detector test as part of the application process. Id. The court held that the plaintiff had plausibly pled an injury in fact by alleging that his participation in the alleged lie detector test was a "downstream consequence" of the informational injury he suffered from CVS's failure to provide him the Section 19B notice. Id.

Here, by contrast, the plaintiffs identify no such downstream consequences. In effect, they have pled nothing more than the mere deprivation of a "procedural right *in vacuo*." Summers, 555 U.S. at 496. Article III requires more. See Spokeo, 578 U.S. at 342 (explaining in dicta that "a bare procedural violation," such as the "fail[ure] to provide the required notice," under the Fair Credit Reporting Act "may" in some cases "result in no harm"). The plaintiffs cannot cure this defect by simply invoking what the amended complaint calls Section 19B's "minimum statutory damages," (Am. Compl. ¶ 3), because "the possibility of a remedy is not alone sufficient to confer standing" to sue for damages, Plazzi v. FedEx Ground Package Sys., Inc., 52 F.4th 1, 7 (1st Cir. 2022) (rejecting injury-in-fact argument based on mere availability of "mandatory treble damages" for violation of federal statute).

### ii.    *Declaratory & Injunctive Relief*

The plaintiffs also lack standing to seek declaratory and injunctive relief. The amended complaint asserts that "[a]bsent injunctive relief, [Macy's] may continue to violate the law and infringe upon the rights of Massachusetts job applicants." (Am. Compl. ¶ 32.) The plaintiffs therefore ask the Court "to declare [Macy's] conduct unlawful" and "enjoin [the defendant] from using and disseminating job application materials that do not comply with [Section 19B]." (Id. ¶ 33.) The plaintiffs have not plausibly pled allegations to show they are entitled to such relief.

A plaintiff "seek[ing] forward-looking declaratory or injunctive relief" must allege sufficient facts to demonstrate an "ongoing injury or a sufficient threat that the injury will recur."

9

Roe v. Healey, 78 F.4th 11, 21 (1st Cir. 2023). Here, the amended complaint fails under either theory. First, no ongoing injury has been pled. For standing purposes, an ongoing injury is one that produces "continuing, present adverse effects." In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 14 (1st Cir. 2008) (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)). As for the bare procedural violation of Section 19B itself—the only harm expressly alleged in the amended complaint—that is not an injury in fact for the reasons discussed above. Moreover, the plaintiffs fail to identify *any* downstream consequences from the alleged violation, much less consequences with continuing, adverse effects.

For similar reasons, the plaintiffs have not plausibly alleged that they are likely to suffer a future injury. A risk of future harm may confer standing, but only "if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." Roe, 78 F.4th at 20 (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)). Here, the amended complaint alleges that Macy's "*may* continue to violate" Section 19B and "infringe" on "the rights" of future unnamed "Massachusetts job applicants." (Am. Compl. ¶ 32 (emphasis added).) That is "a bare hypothesis," not a "plausible allegation." See Katz, 672 F.3d at 77 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

A "hypothetical future injury to other unnamed [plaintiffs] does not give these plaintiffs standing." See In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prods. Liab. Litig., 54 F.4th 28, 41 (1st Cir. 2022); cf. Casillas, 926 F.3d at 332 ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions."). Accordingly, the plaintiffs have not adequately pled facts showing a substantial risk of future harm, or that such harm is certainly impending. See In re Evenflo, 54 F.4th at 41.

10

In sum, the plaintiffs lack Article III standing to pursue the injunctive and declaratory relief they seek in the amended complaint.

## IV. Remand & Costs

Because the Court lacks subject-matter jurisdiction, this case shall be remanded to the Business Litigation Session of the Superior Court. See 28 U.S.C. § 1447(c) (requiring remand "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction"); Plazzi, 52 F.4th at 8 (collecting cases).

Remand leaves one remaining argument for the Court to address. The plaintiffs submit that any order remanding the case should award them costs and fees under Section 1447(c), which provides that the Court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Court declines to exercise its discretion to award fees.

Shortly after Macy's removed this action from the Superior Court and moved to dismiss the original complaint, the plaintiffs amended their complaint to expressly invoke the Class Action Fairness Act.[3] So while it is true that the plaintiffs originally filed this action in the Superior Court, "which does not apply Article III," (Pls.' Opp'n at 7), they did not seek remand when Macy's first removed it to this Court. Nor did they press the issue of standing in their Opposition to the Motion to Dismiss or at oral argument. Instead, the plaintiffs amended their complaint to allege federal subject-matter jurisdiction. (Compare Class Action Compl. ¶ 8 (dkt. 1-1) (alleging subject-matter jurisdiction "pursuant to Mass. Gen Laws ch. 212, §§ 3 and 4"), with Am. Compl. ¶ 9 (alleging

---

[3] In light of the plaintiffs' amendment, the Court terminated as moot the defendant's motion to dismiss the original complaint. (See Order July 25, 2025 (dkt. no. 25).)

subject-matter jurisdiction "pursuant to the Class Action Fairness Act ('CAFA'), 28 U.S.C. § 1332(d)(2)").)

In this posture, and particularly in light of the plaintiffs' strategic choice to go forward with their claims in this Court, an award of costs is not warranted.

**V.**      **Conclusion**

Because the Court lacks subject-matter jurisdiction over the plaintiffs' claims, this action shall be remanded to the Business Litigation Session of the Superior Court. The parties shall bear their own costs.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge